# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SCHUYLER PICKETT, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 22-0075-KD-MU |
| | ) |
| ALL IN CREDIT UNION, | ) |
| | ) |
|    Defendant. | ) |

## **REPORT AND RECOMMENDATION**

On April 25, 2022, Plaintiff Schuyler Pickett, proceeding *pro se,* filed his amended complaint against Defendant All In Credit Union asserting claims arising from the financing of a consumer credit transaction. (Doc. 6). This matter is before the Court on the Motion to Dismiss or in the Alternative for Summary Judgment filed by Defendant All In Credit Union ("All In") on May 11, 2022. (Doc. 8). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72(a)(2)(S) for appropriate action. Because Plaintiff's amended complaint fails to state a claim against Defendant, it is recommended that Defendant's motion for summary judgment be granted, and Plaintiff's complaint be dismissed.

## **I. BACKGROUND**

On or about January 29, 2021, Pickett entered into a contract with All In in which he borrowed money for the purchase of an automobile. (Doc. 6-1). According to the contract, which was attached to Pickett's amended complaint, the amount financed was $18,299.25 and the finance charge, based upon an Annual Percentage Rate of 4.49% over a 60-month term, was $2,205.06. (*Id.*). An itemization of the amount financed

shows that it included $15,201.25, which was paid to Premium Automotive, $399.00 for a Gap fee, $2,693.00 for an extended warranty, and $1.00 for a new MBR fee. (*Id.*). In his amended complaint, Plaintiff argues that the contract should be null and void because All In committed fraud from the inception of the transaction. (Doc. 6 at p. 1). Plaintiff alleges that All In violated 15 U.S.C. § 1605(a)(5) because All In did not include insurance in the finance charge. (*Id.*). He further alleges that inclusion of the Gap fee and the cost of the extended warranty in the amount financed, rather than as part of the finance charge, violated 15 U.S.C. § 1605(a)(1). (*Id.* at pp. 1-2).

## II. **STANDARD OF REVIEW**

All In argues that Pickett's complaint is due to be dismissed, pursuant to Rule 12(b)(6), or, in the alternative, that it is entitled to summary judgment in its favor because the amended complaint fails to state a claim upon which relief can be granted. Because All In has presented an affidavit in support of its position to explain the transaction, the Court will evaluate Pickett's claim under the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure. Pickett had the opportunity to and did file a response in opposition to All In's motion, a response to All In's reply to his response in opposition, and additional documentary evidence.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether the nonmoving party has met its burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992).

"After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. CA 09-745-C, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011). The Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Public Education for Bibb County*, 495 F. 3d 1306, 1313 (11th Cir. 2007).

### III. <u>UNDISPUTED MATERIAL FACTS</u>

On or about January 29, 2021, Pickett entered into a contract with All In in which he borrowed money for the purchase of an automobile. (Doc. 6-1). According to the contract, the amount financed was $18,299.25 and the finance charge, based upon an Annual Percentage Rate of 4.49% over a 60-month term, was $2,205.06. (*Id.*). An itemization of the amount financed shows that it included $15,201.25, which was paid to Premium Automotive, $399.00 for a Gap fee, $2,693.00 for an extended warranty, and $1.00 for a new MBR fee. (*Id.*).

Pickett also executed the GAP Waiver Addendum, which disclosed the fees, terms, and conditions of the GAP services, on January 29, 2021. (Doc. 8-1 at pp. 3-6). The GAP Waiver Addendum states: "I understand the purchase of this GAP Waiver Addendum is voluntary. Whether or not I purchase the GAP Waiver Addendum will not affect my application for credit or the terms of any existing credit agreement I have with the Lender." (*Id.* at p. 3). The GAP Waiver Addendum also states: "I understand this GAP Waiver Addendum form is a part of my Installment Loan and will remain a part of the finance agreement upon assignment, sale or transfer of the agreement." (*Id.*).

Pickett signed the Service Agreement, which disclosed the fees, terms, and conditions of this agreement, on January 29, 2021. (*Id.* at pp. 13-17). The Service Agreement is also a voluntary agreement which by its terms may be cancelled at any time with a full or rebated premium depending on the date of cancellation. (*Id.* at pp. 14). The Service Agreement discloses: "In all states the purchase of a Service

4

Agreement is not necessary in order to finance or purchase a vehicle." (*Id.* at pp. 15).

The loan contract required Pickett to maintain property damage insurance on the collateral, a 2017 Ford Escape. (Doc. 11-4). The relevant portion of the contract states:

> (a) Your requirement to maintain property Insurance. You are required to carry Insurance to protect your Interest and our interest in the collateral securing this loan. The insurance:
>
> - Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this Loan.
> - Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as we might otherwise inform you that we require.
> - Must have a maximum deductible as set forth by us.
> - Must be maintained in force for as long as the loan is outstanding.
> - Must name us as loss payee. We must receive the loss payee endorsement within 30 days of your loan date.
>
> … The insurance may be obtained by an insurer of your choice that is acceptable to us.

(*Id.*). The contract further provided that if the borrower failed to maintain the insurance described above or failed to provide proof of such insurance, All In could obtain insurance to protect its interest in the property. (*Id.*). The contract further stated that the total cost of any such lender-placed insurance would be added to the loan balance. (*Id.*).

On April 10, 2021, All In sent a letter to Pickett reminding him that his loan agreement required him to have physical damage insurance on the 2017 Ford Escape

5

until he paid off the loan and requesting that he provide proof of such insurance within 10 calendar days. (Doc. 11-1). The letter further advised Pickett that, if he did not provide proof of such insurance within 10 days, the premium of $3,250.00 for the insurance that All In would purchase would be charged to him. (*Id.*).

## IV. <u>LEGAL ANALYSIS</u>

In his amended complaint, Plaintiff identifies three grounds in support of his contention that the loan contract with All In should be declared null and void. (Doc. 6 at pp. 1-2). First, he alleges that inclusion of the Gap fee in the amount financed, rather than as part of the finance charge, violated 15 U.S.C. § 1605(a)(1). (*Id.*). Likewise, he alleges that inclusion of the cost of the extended warranty in the amount financed, rather than as part of the finance charge, violated 15 U.S.C. § 1605(a)(1). (*Id.*). Finally, Plaintiff alleges that All In violated 15 U.S.C. § 1605(a)(5) because All In did not include insurance in the finance charge. (*Id.*). After All In filed its reply to his response to its motion for summary judgment which clearly established that inclusion of the Gap fee and the cost of the extended warranty in the amount financed, rather than as part of the finance charge, was not in violation of § 1605(a)(1), *see* Doc. 9 at pp. 3-5, Plaintiff conceded these two arguments. (Doc. 13 at p. 2). Because Plaintiff understands and acknowledges in his reply that the Gap fee and the cost of the extended warranty is not required to be included in the finance charge, the Court will not comment more on those claims. The Court adopts by reference the explanation set forth in All In's filings. *See* Doc. 9 at pp. 3-5.

Plaintiff, however, continues to argue that All In is liable under The Truth In Lending Act (TILA) for failing to include the amount of his automobile insurance

premium in the finance charge. Even if the Court was to give Plaintiff leeway as a *pro se* litigant and find that he had properly alleged this claim in his complaint, the claim would fail. The contract states:

> (a) Your requirement to maintain property Insurance. You are required to carry Insurance to protect your Interest and our interest in the collateral securing this loan. The insurance:
>
> • Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this Loan.
>
> • Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as we might otherwise inform you that we require.
>
> • Must have a maximum deductible as set forth by us.
>
> • Must be maintained in force for as long as the loan is outstanding.
>
> • Must name us as loss payee. We must receive the loss payee endorsement within 30 days of your loan date.

The relevant TILA provision, which is 15 U.S.C. § 1605(c), states as follows:

> (c) Property damage and liability insurance premiums included in finance charge
>
> Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

The applicable TILA regulation, commonly referred to as Regulation Z, is found at 12 CFR Part 226.4. Part 226.4(d)(2) addresses property insurance premiums. It provides that premiums for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property may be excluded from the finance charge if the insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed. In addition, a creditor may reserve the right to refuse to accept, for reasonable cause, an insurer offered by the consumer. This regulation is supplemented by Official Staff Interpretations found in 12 CFR Appendix Supplement I to Part 226.4(d) which states:

> 8. Property insurance. To exclude property insurance premiums or charges from the finance charge, ***the creditor must allow the consumer to choose the insurer and disclose that fact.*** This disclosure must be made whether or not the property insurance is available from or through the creditor. The requirement that an option be given does not require that the insurance be readily available from other sources. The premium or charge must be disclosed only if the consumer elects to purchase the insurance from the creditor; in such a case, the creditor must also disclose the term of the property insurance coverage if it is less than the term of the obligation.

(emphasis added). The retail installment contract at issue here has the required disclosure in the area commonly referred to as the "Fed Box" where it states: "Property insurance: You may obtain property insurance from anyone you want that is acceptable to the Credit Union."

The few reported cases addressing this relatively obvious disclosure support dismissal of Plaintiff's claim. *See Szumny v. Am. Gen. Fin.*, 246 F.3d 1065 (7th Cir. 2001) (finding that lender satisfied conditions for excluding property insurance

8

premiums from finance charge when it disclosed that buyer could obtain required insurance for collateral through another party); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (dismissal granted where creditor disclosed that property insurance could be obtained from a person of the consumer's choice); *Gordon v. Chase Home Fin., LLC*, No. 8:11-CV-2001-T-33EAJ, 2013 WL 256743, at *8 (M.D. Fla. Jan. 23, 2013) (dismissal of TILA claim where Plaintiffs were first given the option of obtaining flood insurance before Defendant secured the complained of coverage at Plaintiffs' expense). Because the contract here allowed Plaintiff to furnish this insurance through anyone he chose, the premium was properly excluded from the finance charge. *See Dixon v. S&S Loan Service of Waycross, Inc.*, 754 F. Supp. 1567, 1571 (S.D. Ga. 1990) (finding that a statement setting forth required insurance could be furnished through anyone the debtor chose or through an existing policy met the requirements for exclusion for the disclosed finance charge under § 1605(c) and Regulation Z).

## V. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff has failed to state a plausible claim for relief against All In as a matter of law; therefore, it is **RECOMMENDED** that the Motion to Dismiss or in the Alternative for Summary Judgment filed by Defendant All In Credit Union, which has been treated as a motion for summary judgment pursuant to Rule

9

12(d), (Doc. 8) be **GRANTED** and that Plaintiff Schuyler Pickett's action be **DISMISSED with prejudice.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on Plaintiff in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), S.D. Ala. Gen. LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **13th** day of **December, 2022**.

/s/ P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**